UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

PLACEMKR LLC,                              §
                                          §
                Plaintiff,                §
                                          §
v.                                        §          1:25-CV-48-RP
                                          §
PLACEMAKR HOSPITALITY, LLC, and           §
PLACEMAKR, INC.,                          §
                                          §
                Defendants.               §

## ORDER

Before the Court is Defendants Placemakr Hospitality, LLC and Placemakr, Inc.'s

("Defendants") Motion to Dismiss the First Amended Complaint in Part. (Dkt. 18). Plaintiff

PlaceMKR LLC ("Plaintiff") filed a response, (Dkt. 20), and Defendants filed a reply, (Dkt. 24).

After considering the motion and the relevant law, the Court will deny the motion.

### I. BACKGROUND

Plaintiff is a real estate private equity firm that uses its word mark PlaceMKR in connection

with real estate investment and development services, asset management, and property management.

(Am. Compl., Dkt. 16, at 3). Plaintiff began business in Texas in 2018 and alleges it has expanded its

use of the PlaceMKR mark nationwide, starting with its first real estate transaction in 2019 with a

fund headquartered in New Jersey. (*Id.*). Plaintiff claims that it has since continued to expand outside

of Texas, and now "engages in real estate investment services with investors residing in Connecticut,

New York, New Jersey, Texas, Montana, California, and the District of Columbia." (*Id.*). Plaintiff

does not allege that it owns any trademark registration for its name. (Mot., Dkt. 18, at 1).

Defendants operate as a real estate investment firm that acquires real estate and

1

develops it for use as temporary lodging apartment complexes and hotels. (Am. Compl., Dkt. 16, at 4). Defendants have operated under the name and mark PLACEMAKR since 2022, but initially offered services only in New York, Maryland, Georgia, and the District of Columbia, not Texas. (*Id.*). Plaintiff alleges that Defendants now operate in Texas, Georgia, Tennessee, New York, Maryland, and the District of Columbia. (*Id.* at 8).

Between August 24, 2021, and February 9, 2022, Defendants filed three trademark applications with the United States Patent & Trademark Office ("USPTO") for the mark PLACEMAKR, claiming "rental of short-term furnished apartments," "providing temporary lodging services in the nature of an apartment-based lodging," "hotel accommodation services," and "software as a service (SaaS) featuring software for real estate management." (*Id.* at 4–5). The applications were assigned Application Serial Nos. 90/900,077, 97/975,443, 97/260,543, and 97/260,555. (*Id.* at 5). Application Serial No. 90/900,077 matured into U.S. Registration No. 7,069,499 on May 30, 2023, and Application Serial No. 97/260,543 matured into U.S. Registration No. 7,197,367 on October 17, 2023. (*Id.*). Application Serial Nos. 97/975,443 and 97/260,555 remain pending. (*Id.*).

This dispute arises out of Defendants' entry into the Austin and San Antonio markets in the spring of 2024, when they began marketing extended-stay apartments and hotels under the PLACEMAKR mark. (*Id.*). Defendants' website also began to offer real estate development and investment services under the name and mark PLACEMAKR INVESTMENTS. (*Id.*). Plaintiff alleges that Defendants' real estate investment services are targeting the same real estate equity investors, lenders, brokers, consultants, buyers, and sellers to which Plaintiff markets its services. (*Id.* at 6). Plaintiff claims it has encountered numerous examples of customer confusion, "including customers of Defendants sending booking requests and complaints to Plaintiff, sending job applications to Plaintiff, and even showing up at Plaintiff's offices." (*Id.*). Plaintiff also claims that

"many investors and consultants involved in business dealings with Plaintiff have called, expressing concerns about 'Plaintiff's' real estate investments that were, in fact, Defendants' real estate investments." (*Id.*). Finally, Plaintiff claims that "real estate lenders and investors," who are "[a]pparently confused into thinking that Plaintiff's real estate investment services are actually Defendants' real estate investment services," have "cancel[ed] meetings with the Plaintiff, stating that they are not interested in investing in 'short term rentals.'" (*Id.* at 7).

Plaintiff filed its original complaint on January 10, 2025. (Dkt. 1). Defendants moved to dismiss on March 7, 2025, and rather than respond to the motion to dismiss, Plaintiff filed an amended complaint as of right on March 28, 2025. The original complaint brought five counts for relief: (1) federal and common law trademark infringement; (2) unfair competition under 15 U.S.C. § 1125(a) (Lanham Act section 43(a)); (3) permanent injunction; and (4) cancellation of registrations. (Compl., Dkt. 1). The amended complaint eliminates the federal trademark infringement claim, alleging trademark infringement only under "Texas common law and under the common laws of the states in which Defendants operate" and clarifies that Plaintiff's unfair competition claim is based on a false designation of origin theory—that is, Defendant falsely designated the origin of their services. (Am. Compl., Dkt. 16, at 8–9). Additionally, instead of the separate causes of action it had alleged in the original complaint, Plaintiff requests a permanent injunction and cancellation as relief for its substantive trademark infringement and unfair competition claims. (*Id.*). Because Defendants' actions were allegedly "willful and deliberate," Plaintiff also requests enhanced damages, attorneys' fees and costs under 15 U.S.C. § 1117, and destruction of infringing articles, signage, and activities under 15 U.S.C. § 1118.

Defendants once again moved to dismiss in part on April 11, 2025. (Mot., Dkt. 18). In the motion, they argue that: (1) the trademark infringement claim should be dismissed to the extent it asserts common law trademark infringement under the laws of states other than Texas; (2) the unfair

3

competition claim should be dismissed because Federal Rule of Civil Procedure 9(b) applies to false

designation of origin claims, and Plaintiff has failed to plead the claim with particularity under Rule

9(b) or even under the notice pleading standard of Rule 8(a); and (3) both the claims should be

dismissed to the extent they seek cancellation as a form of relief because cancellation claims must be

plead with particularity under Rule 9(b), and the remedy of cancellation does not extend to pending

applications as a matter of law. (*Id.* at 1–2).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts

'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina

Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area

Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a

complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for

entitlement to relief—including factual allegations that when assumed to be true 'raise a right to

relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the

complaint, its proper attachments, "documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

### A. Trademark Infringement

Count I of the amended complaint asserts trademark infringement claims under "Texas common law and under the common laws of the States in which Defendants operate." (Am. Compl., Dkt. 16, at 8). It additionally alleges that, outside of Texas, Defendant is operating in "Georgia, Tennessee, New York, Maryland and the District of Columbia." (*Id*). Defendants urge dismissal of any claims based on the common law of states other than Texas because Plaintiff has failed to allege (1) that Defendants have infringed on Plaintiff's mark in any states other than Texas; or (2) that Plaintiff has any trademark rights in states other than Texas. (*Id.* at 9–10).

First, the Court finds that Plaintiff has adequately plead that it has trademark rights outside of Texas. Under the common law, a senior user of a trademark can establish rights in the mark in those territories where it actually uses the mark or into which the user might naturally expand. *See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.,* 889 F.2d 1018, 1023 (11th Cir. 1989). A senior user that has constantly expanded its business prior to the junior user's adoption of the mark may be entitled to

exclusive rights in a zone of natural expansion, even if that zone ousts a junior user from its current territory. *Id.* at 1027–28 (citing McCarthy on Trademarks § 26:8).

Here, the amended complaint alleges Plaintiff using the PlaceMKR mark across the country by completing a real estate transaction in 2019 with a New Jersey-based real estate fund, seeking investors nationwide, making real estate development proposals in various states, participating in and promoting the PlaceMKR brand in real estate investment and development trade conferences and events, and actively marketing Plaintiff's real estate investment and development opportunities to investors and capital partners across the United States. (Am. Compl., Dkt. 16, at 3). Additionally, Plaintiff currently engages in real estate investment services with investors residing in Connecticut, New York, New Jersey, Texas, Montana, California, and the District of Columbia. (*Id.*). The amended complaint also cites evidence supporting Plaintiff's use of the PlaceMKR mark extraterritorially to Texas. (*See id.* Ex. A, at 15 ("As the city [of Austin] has grown, so has interest from out-of-state investors who don't have the finger on the pulse of the city."); *id.* Ex. B, at 21 (news article providing that Plaintiff's real estate development "sits in one of Austin's opportunity zones, which are part of a federal tax incentive provision that encourages investors to re-invest capital gains into Qualified Opportunity Zone Funds")).

Though courts often reject the zone of natural expansion argument "on the facts, narrowly defining the senior user's zone of natural expansion," *Tally-Ho*, 889 F.2d at 1028, the argument should not be dismissed before discovery has commenced. Further discovery would shed light on Plaintiff's zone of natural expansion. Because Plaintiff has alleged that it has or might naturally expand nationwide, and it began to do so before Defendants started using the PLACEMAKR mark

in 2022, (*see* Am. Compl., Dkt. 16, at 6), Plaintiff has adequately plead it has trademark rights in the states in which Defendants operate.

As for Defendants' activities outside of Texas, Plaintiff pleads that the parties' goods and services are overlapping, if not identical. (*Id.*). Though Plaintiff concedes that it does not yet know the scope of Defendants' use of the PLACEMAKR mark, the Court agrees it would be premature to dismiss Plaintiff's claims at this stage when further details will be sought during discovery. Accordingly, the Court will not dismiss Plaintiff's trademark infringement claims under the common law of states other than Texas.

### B. Unfair Competition

In deciding whether to dismiss Plaintiff's unfair competition claim, the first question is whether the pleading requirements of Rule 8(a) or Rule 9(b) apply. Because the amended complaint alleges Defendants' false designations were "willful and deliberate," Defendants contend the claims are grounded in fraud and thus subject to Rule 9(b). (Mot., Dkt. 18, at 11). Under Rule 9(b), "a plaintiff pleading fraud [must] specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

The Court finds instead that the more liberal Rule 8(a) applies. Section 43(a) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another

> person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §1125(a).

As seen here, the provision prohibits false designations of origin with no mention of intent to deceive or defraud. In contrast, fraud generally requires that misrepresentations be made with the intent to deceive. *See* Restatement (Second) of Torts §§ 525–526 (1977); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 108 (5th ed. 1984). Because section 43(a) contains no scienter requirement, district courts in the Fifth Circuit have generally applied Rule 8(a) to section 43(a) claims. *E.g.*, *Tempur-Pedic Int'l Inc. v. Angel Beds, LLC*, 902 F. Supp. 2d 958, 965 (S.D. Tex. 2012); *Healthpoint, Ltd. v. Allen Pharm., LLC*, 2008 U.S. Dist. LEXIS 20971, at *8 n.4 (W.D. Tex. Mar. 18, 2008) (explaining that the Fifth Circuit has not held that the heightened pleading standard applies to false advertising claims under section 43(a)); *Vendever LLC v. Intermatic Mfg.*, 2011 U.S. Dist. LEXIS 105257, at *12 (N.D. Tex. Sept. 16, 2011) (same). Defendants fail to cite a single decision from the Fifth Circuit that applies Rule 9(b) to section 43(a) claims. (*See* Mot., Dkt. 18, at 11–12).

Though Rule 9(b) may be applied to claims that are "fraud-like" or "grounded in fraudulent conduct," courts have been reluctant to apply Rule 9(b) unless the claims are "founded on expressly stated claims of fraud." *Microsoft Corp. v. Chen*, 2005 U.S. Dist. LEXIS 47169, at *3 (S.D. Tex. Sept. 29, 2005) (explaining that a single use of the adjective "'fraudulent' . . . does not justify the application of Rule 9(b)'s heightened pleading standard to claims that are otherwise subject only to the liberal notice pleading requirements of Rule 8(a)"); *see also Tempur-Pedic Int'l Inc.*, 902 F. Supp. at

965–67 (applying Rule 8 even though the defendants argued that the plaintiff's allegations "essentially accuse Defendants of engaging in fraudulent conduct"). As the Fifth Circuit explains, "Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated. The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).

Here, Plaintiff alleges that Defendants' conduct was "willful and deliberate," but only in connection to its requests for enhanced damages, attorneys' fees, and costs under 15 U.S.C. § 1117, and destruction of infringing articles, signage, and activities under 15 U.S.C. § 1118. (Am. Compl., Dkt. 16, at 9). Because section 43(a) itself contains no scienter requirement, the proper remedy is to disregard Plaintiff's allegations of willful and deliberate conduct and ask whether Plaintiff has met the requirements of Rule 8(a). Plaintiff's allegations that Defendants willfully violated the law in connection with its requests for special damages do not transform Plaintiff's unfair competition allegations into fraud allegations.

The next question is whether Plaintiff has satisfied Rule 8(a). For a false designation of origin claim under section 43(a), Plaintiff must show that: (1) Defendants made a false or misleading statement of fact about their product or service; (2) the statement either deceived or had the capacity to deceive a substantial segment of potential customers; (3) the deception was material, in that it was likely to influence consumers' purchasing decisions; (4) the product or service is in interstate commerce; and (5) Plaintiff has been or is likely to be injured as a result of the statement at issue. *Farouk Systems, Inc. v. Costco Wholesale Corp.*, 700 F. Supp. 2d 780, 786 (S.D. Tex. 2010) (citing *Pizza Hut v. Papa John's Int'l*, 227 F.3d 489, 495 (5th Cir. 2000)).

Defendants argue that Plaintiff's allegations fail to allege that Defendants' statements "either deceived or had the capacity to deceive a substantial segment of potential customers," because

9

Plaintiff does not allege that the mix-up of the parties' respective names was caused by exposure Defendants' PLACEMAKR marks. (Mot., Dkt. 18, at 14). The Court disagrees. Plaintiff alleges that Plaintiff and Defendant are "targeting the same real estate equity investors, lenders, brokers, consultants, buyers and sellers." (Am. Compl., Dkt. 16, at 6). Plaintiff further alleges that lenders and investors have canceled meetings with Plaintiff because they are not interested in investing in "short term rentals," and this confusion was caused by the mistaken belief that "Plaintiff's real estate investment services are actually Defendants' real estate investment services." (*Id.* at 7). Additionally, "many investors and consultants involved in business dealings with Plaintiff have called, expressing concerns about 'Plaintiff's real estate investments that were, in fact, Defendants' real estate investments." (*Id.* at 6). At this stage, these statements are enough to allege that Defendants' representations "deceived or had the capacity to deceive a substantial segment of potential customers," and were "likely to influence consumers' purchasing decisions." The Court therefore finds Plaintiff has stated a claim under Rule 8(a).

As with Plaintiff's trademark infringement claim, Defendants also ask the Court to dismiss Plaintiff's unfair competition claim as to claims under the common law of states other than Texas. (Mot., Dkt. 18, at 14). As the Court previously explained, dismissing the non-Texas claims at this stage is premature. Accordingly, the Court will deny Defendants' motion to dismiss as to Plaintiff's unfair competition claim.

## C. Cancellation

Finally, Defendants urge the Court to dismiss the claims as to Plaintiff's request for cancellation of Defendants' federal trademark registrations and pending applications for registrations under 15 U.S.C. § 1119. (*Id.*). Defendants offer two reasons: (1) the claims fail to comply with Rule 9(b); and (2) even if Plaintiff has adequately plead its cancellation request as to Defendants' already

registered trademarks, courts may not cancel pending *applications* for trademark registrations as a matter of law. (*Id.*).

First, the Court concludes that Plaintiff is not required to plead its cancellation request under Rule 9(b). As the Court explained above, Rule 9(b) is generally reserved for claims predicated on statutes or common law requiring some showing of scienter. *See, e.g., Dorsey*, 540 F.3d at 338–39; *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641–43. Defendants cite multiple cases in which courts have applied Rule 9(b) to trademark cancellation requests under section 1119, but these cases considered cancellation requests based on fraud. *See, e.g., Roor Int'l BV v. KKRGL, Inc.*, 2020 WL 13924004, at *2 (N.D. Tex. Jan. 3, 2020); *GoFresh, LLC v. G.O. Corp. I*, 2018 WL 1532957, at *3 (E.D. La. Mar. 29, 2018); *Fitz v. Nuñez*, 2024 WL 4009949, at *5 (N.D. Tex. Aug. 29, 2024); *Sream, Inc. v. Superior Discount, LLC*, 2019 WL 2124887, at *4 (E.D. La. May 15, 2019). Plaintiff asserts that its cancellation request is not based on fraud, but rather on a likelihood of confusion between the parties' marks. (Resp. Dkt. 28, at 8). Intent to confuse is not required to find a likelihood of confusion. *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999); *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 704 (S.D. Tex. 2009).

Defendants contend the cancellation request is based on fraud. According to Defendants, because the original complaint "attempted to claim that Defendants intentionally defrauded the USPTO when it submitted its applications," "Plaintiff cannot now contradict those allegations to avoid the need to plead the cancellation claim with particularity." (Reply, Dkt. 25, at 5). To the contrary, the Court finds the differences between the original and amended complaints to be minor and do not warrant rejection of the amended complaint. The original complaint alleged that when Defendants applied for the '367 and '499 registrations, "Defendants knew, or should have known, that Plaintiff had been using its PlaceMKR mark for similar goods and services." (Compl., Dkt. 1, at 10). In the amended complaint, Plaintiff no longer alleges that Defendants "knew, or should have

known" about Plaintiff's use of the PlaceMKR trademark, and instead requests cancellation based on the likelihood of confusion between the parties' marks. (Am. Compl., Dkt. 16, at 8–9). It is not uncommon for a plaintiff to modify or clarify its cause of action in response to a defendant's motion to dismiss, as Plaintiff did here.

Defendants' cited cases fail to support their position. In *Carillo v. Buendia*, 2020 WL 4584380 (S.D. Tex. Aug. 10, 2020), the court ultimately declined to dismiss the amended complaint even though it occasionally deviated from the original complaint because "the amendments are less a change of facts than a modification of their characterization." *Id.* at *7. In *Bradley v. Chiron Corp.*, 136 F.3d 1317 (Fed. Cir. 1998), the court struck allegations in the amended complaint because the original complaint had alleged that no lawyers had explained the settlement agreement to the plaintiff before he signed it, but the amended complaint alleged that they did. *Id.* at 1326–26. These cases illustrate that an amended complaint should be rejected only when it is "diametrically opposed" to the original complaint. *Carillo*, 2020 WL 4584380, at *4. Here, the Court concludes the amended complaint is consistent with the original complaint, and that it asserts a likelihood of confusion as the basis for its cancellation request. Accordingly, Rule 8(a) applies. Because Defendants have not argued that the cancellation request does not meet Rule 8(a), (*See*, Mot., Dkt. 18, at 15), the Court will decline to dismiss the cancellation request for this reason.

Second, the Court concludes it has the power to cancel Defendants' pending applications for registrations under section 1119. Section 1119 gives courts authority to "determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to registrations of any party to the action." 15 U.S.C.

§ 1119. Defendants argue that section 1119 gives courts the authority to cancel registered trademarks but not pending applications. (Mot., Dkt. 18, at 15).

The Court disagrees. Another judge of this Court has previously stated that a court may exercise jurisdiction over pending applications when "one of the parties [has] a registered trademark which has a sufficient nexus with the dispute over the pending applications." *Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738, 744 (W.D. Tex. 2014) (Sparks, J.). Though that case turned on whether the registrations and pending applications were sufficiently related, rather than whether the Court had the power to cancel pending applications in the first place, the opinion is persuasive evidence that the Court has jurisdiction to issue the requested relief.

More recently, the Ninth Circuit squarely held that a federal court may adjudicate pending trademark applications where a related registered trademark is also at issue. *BBK Tobacco & Foods LLP v. Central Coast Agric., Inc.*, 97 F.4th 668, 670–71 (9th Cir. 2024). In doing so, it explained that

> The district court's authority to "determine the right to registration" and "rectify the register" [under section 1119] includes the power to decide disputes over trademark applications. The Lanham Act refers to an "[a]pplication for use of trademark" as a "request [for] registration of [a] trademark on the principal register." 15 U.S.C. § 1051(a)(1), (b)(1). A challenge to an application thus necessarily affects the applicant's right to a registration. *See* 15 U.S.C. §§ 1119, 1051(b)(1)[.]

*Id.* at 670. Defendants cite only out-of-circuit district court cases that dismiss requests for cancellation of a party's pending applications for registration. (*See* Mot., Dkt. 18, at 15–16). The Court finds the Ninth Circuit's opinion persuasive, and Defendants have cited no Fifth Circuit authority or persuasive consensus from district courts in the Fifth Circuit that conclude otherwise. Therefore, the Court holds that it has the authority to cancel Defendants' pending applications

because related registered trademarks are also at issue. The Court will therefore decline to dismiss Plaintiff's request to cancel Defendants' pending applications.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss, (Dkt. 18), is **DENIED**.

**SIGNED** on August 19, 2025.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE